Case number 23-1901, USA v. Terrance Vanochten. Mr. Sellis, you may proceed for the appellate. Good morning. May it please the court, my name is Pedro Sellis and I represent Terrance Vanochten. I'd like to reserve three minutes for rebuttal. This case presents a novel issue in the circuit. Does the second amendment permit the government to disarm people who use marijuana? Now while 18 U.S.C. 922 G3, which prohibits users of a controlled substance from possessing firearms, may be facially constitutional, that is, there are some circumstances under which it is constitutional, it is not constitutional as applied to a defendant who uses marijuana three times a week, particularly a defendant who does so in a state that has legalized marijuana. Under Bruin, the government bears the burden of demonstrating that section G3 is constitutional and must do so by showing that it is consistent with this nation's tradition of firearm regulation and the government cannot do so here. When we're looking at history, it's important to look at not only the groups that were disarmed, but the groups that were permitted to keep their right to bear arms. And as the Fifth and Eighth Circuit have determined, the group that is most similar to habitual users of marijuana are people who abuse alcohol. This was a sentencing, right? Correct. And so the standards for ponderance of the evidence, am I correct? Correct. Well, and here the district court found that he was actively using marijuana and alcohol, they found a warm pipe, they found a half-drinking beer, he was shooting. Why isn't that enough? I mean, that's enough to show he was dangerous, especially when you couple it with the propane tank in the area where he was shooting. It seems to me, as applied, you lose under that. Your Honor, I think the appropriate question here is, when we're determining whether Mr. Van Ochten fits that class-wide generalization of dangerousness, the question is what benchmarks should the court look to? Well, but everyone said that active, even the circuits you point to, Connolly, in those cases in your brief, they've said that if they're actually intoxicated at the time they're shooting, they fit every benchmark, which makes sense. I don't even think you're disputing that. And here the district court found by a preponderance of the evidence he was. Why isn't it open and shut? The district court certainly found that he was under the influence of marijuana at the time of his arrest, which was approximately 15 to 30 minutes after the shooting incident. I don't think the record establishes one way or another whether he was under the influence of marijuana at the time. Well, at page ID 348 in the sentencing, the district court adopted the government's argument saying just that. So, I mean, after hearing the evidence, making that determination, it seems to me that's an op. The other point in this case is that, as Your Honor pointed out, this came up via sentencing. And the way it applies to Mr. Van Ochten's case is that he was held responsible for all of the firearms in his home. He was held responsible for possessing between 18 to 24 firearms. The district court determined that because he was a user of marijuana, Section G3 applied, and although he was not charged or convicted under that, that rendered his possession of all the firearms in his home illegal and thus relevant conduct. So the court didn't apply the enhancement just based on the firearm that he fired or the firearm that he briefly carried in his home while under the influence of marijuana. It was all of the firearms in his home. So we believe that even if the court determines that he was under the influence of marijuana at the time that he fired that rifle, then perhaps that rifle was properly relevant conduct. But, again, the enhancement was applied on the basis of all the firearms that he possessed in his home, including some that there's no evidence in the record that he ever used or carried while under the influence of marijuana. But the pipe bomb, that was the base offense for this prosecution. Correct. Would that be considered in terms of his dangerousness analysis? I think that goes to the question of what benchmarks should the court look at when determining, when making this dangerousness determination. We believe that it should not just be an open-ended, unlimited inquiry in whether the defendant is dangerous, but there should be . . . Why? I mean, that strikes me as completely counterintuitive. Your Honor, I think Williams supports this argument in a couple of different ways. Williams says you can look at the entire record. What Judge Radler's asking you about is a pipe bomb. I don't think you're going to find many people that are going to say a pipe bomb isn't dangerous. And someone who's making and using them isn't dangerous. And he had three of them. Yes, Your Honor. But in Williams, one of the things the court looked at is that in making these dangerous determinations historically, there were usually benchmarks that were applied. And in the context of felon and possession, what the court determined was an appropriate benchmark for district courts to look at was the defendant's criminal record. And that wasn't limited to any specific felonies. It was the entire criminal record. But there was still a tie to the felon and possession law. The court didn't just say the district court can make a dangerousness determination. So I understand your argument. You're saying that under this provision, since it relates to alcohol, drugs, intoxication, that's all you can look at in making the dangerousness inquiry. If he's beat his wife six times and murdered three people, that's besides the point. It may be relevant for G1, but it has nothing to do with this. I think that's what other circuits have looked at. They've looked at whether, for example, in the Fifth Circuit, the question the circuit posed was whether the marijuana usage made the defendant predisposed to armed violence, whether the defendant had a history of drug-related violence. Aren't we, at the end of the day, just looking to see if they're violent? And so why wouldn't the pipe bombs be pertinent? I mean, you're looking to see if the alcohol and drugs will cause them, there's a causal step, will cause them to be violent. In fact, you make this argument in your brief. You point out, you know, I mean, the Eighth Circuit talks about the 80-year-old grandmother who occasionally smokes marijuana. You make the point your guy smokes three times a week or whatever you said. And it's ultimately we're trying to determine if they are violent when we're doing an as-applied challenge. On its face, this is a hard battle. But as-applied, I get why you're fighting there. But that's where we're trying to determine if they're violent, if they'd be violent. Isn't that the ultimate inquiry? And so why aren't the pipe bombs relevant? Again, Your Honor, and I'm not saying the pipe bombs are entirely irrelevant, but I believe that the appropriate benchmark is whether there's a connection between the drug usage and the dangerousness. Only crimes that are committed while using drugs or tied to the use of drugs would count in terms of a dangerousness history? There could be different scenarios. Again, I think if the drugs themselves predispose the defendant to violence, that could be enough. I mean, the court pointed to methamphetamine, PCP, other synthetic drugs that by themselves predispose the defendant to violence. Or the Fifth Circuit held when you were looking at the history of violence, what we're looking at is a history of drug-related violence. If your client had murdered eight people previously in the last couple years, you would say, so long as there's no drugs involved in those crimes, he wasn't on drugs, he wasn't murdering people to obtain drugs, that he's not a dangerous person that can be disarmed. And again, that might relate to other provisions that he could be disarmed under, but- One of those provisions, because he's discovered with drugs, you can see he's a somewhat regular user. I had a separate question of whether you're quibbling with he's a user because it's three times a week and he has to be used more frequently to be a user. But we have all the same facts, right? He's discovered with the drugs in his home, and he's got a history of really serious crimes. I suppose he'd blown up three pipe bombs in the prior five months, but no evidence that he was using drugs when he blew up the pipe bombs. Yes, correct, Your Honor. Our position would be that if he had this past history and the drug use was subsequent to that history, then that past history would not be relevant. What about if his drug use was during that period but not specifically tied to the crimes? I think if it's during that time, the past drug use at the same time as violent offenses, that's closer. Going back to the Fifth Circuit, which asks if the defendant has a history of drug-related violence. How about this? What kind of defendant would qualify here for the G3, for the higher base offense level for this crime? Who would be a disabled person in your mind? Certainly a defendant who used different controlled substances. There's modern synthetic substances that the Eighth Circuit identified. A defendant whose drug use was so heavy and so regular that they were rendered essentially permanently impaired. Again, a defendant whose ties between the drug use and violence are clearly established. I think there's multiple ways you can get there. But in this case, when we have the modest habitual use, and just to answer Your Honor's other question, we're not quibbling that he's a user. We do believe that he does qualify as a user under the statute. But I do think it's a relevant fact that this was modest habitual use. It wasn't use that was so consistent and so heavy that he was essentially permanently impaired. So what's seven days a week? Is that permanently? Again, it's hard to say, and I don't think the court needs to draw that line. But in this case, and it's not only that it was three times a week, but that it was five grams over the course of a month. So that use was not enough to render him essentially permanently impaired. Rather, he was similar to someone who abuses alcohol, who there may be some times where they're impaired, but when they're sober, they have the right to possess a firearm. If the court has no additional questions, I will. All right. Thank you. Good morning, Your Honors. May it please the court, John Schottel on behalf of the United States government. The district court, consistent with the Second Amendment in this case, applied two guideline provisions to increase Mr. VanOchten's base offense level and then an additional two levels because he was an unlawful user of drugs while he was in possession of the firearms and weapons in this case. History and tradition support disarming an individual under those circumstances, particularly one such as Mr. VanOchten, who is certainly dangerous. As this court in Williams and as this court in other cases have recognized, Congress made consistent with the Second Amendment disarmed categories of people that are deemed dangerous. The way I read the historical law is they prevented carry and use of guns while intoxicated. Fair? I think that's generally true, Your Honor, depending on the time period. But certainly around the founding, that seems to be the relative limitation. So why can you prohibit possession? In other words, if you have someone who's addicted, they lock away the gun in a safe and don't use it while they're fighting their addiction. Why does that work? So I think, Your Honor, and this goes along a little bit with the Connolly analysis, and I think where the flaws come in is the fact of looking at all these historical traditions in isolation. Connolly and even the Eighth Circuit in many respects and Veasley and other cases had looked at each historical tradition and sets them up, knocks them down, looks at them in a silo. And I think Rahimi was important on this point because it requires looking at all these historical traditions together. And what that means in this case is certainly it's relevant that there are historical intoxication laws, and particularly around the founding, but certainly much less so later that we're more confined to shooting or carrying. That's a federal prohibition. So why, I guess your argument is under tradition, whatever that is, the later provisions are relevant? I think so, Your Honor. I think it's relevant in numerous respects. Would you agree with me that the founding provisions are much more relevant? I think the founding provisions are much more relevant, but I think this Court and even the Supreme Court has frequently looked at post-enactment history, especially when it's not contradictory to the founding laws and other traditions. And it's important, I think this goes especially to Justice Barrett's point in concurrence in Rahimi, not to automatically assume that just because a legislature at the founding didn't exercise its power, that means that it necessarily was something it couldn't do. There are certainly policy decisions that are made. And as time went on, as we laid out in our brief, controlled substance use became a problem that at best was confined to a small number of people to a widespread issue. And I think this is 922G3 is trying to tackle that issue. And going back to your original question, Your Honor, the point on intoxication, I think the fact that there is some level of discrepancy there is between the historical laws at the founding and the law that is before the Court right now is the fact that controlled substances are illegal. We have people who are engaged in a course of illegal conduct. And for most of this country's history, that has not been the case with alcohol. And it creates additional problems and considerations. Isn't marijuana legal in Michigan? That's true, Your Honor, it is. So what do we do with that fact? I get that it's federally illegal still. So what do we do with that fact to the extent you're relying on some sort of illegality component? I think it's certainly a very tricky question, Your Honor, and there is a discrepancy between the federal and the state laws on this point. I would say it would be a strange result and it would create many strange issues across the country if the fact that a state law was in effect could make something unconstitutional in some place and not another. Certainly there are other states that have much stronger restrictions on marijuana use. Let's put it this way. It's pretty clear that the intoxication law at some level is on its face constitutional. And really the quibble here, as I see it, is as applied. And what your friend on the other side is saying is, look, he's an occasional user, and both the Fifth and Eighth Circuits, and maybe another one, I can't remember, but Connelly and Daniels have said that being an occasional user is not a problem if you're not intoxicated when you're firing the firearms. And I think that's the issue that Mr. Van Ochten keeps running into is that every time he tries to make a distinction, he ends up falling into the category of people historically who could be disarmed or restricted. Here, the facts, I think, are pretty strong that Mr. Van Ochten, as his wife told deputies, would go out, shoot his guns, drink alcohol, and smoke marijuana while he was doing so, and that he maintained that pattern in this case. His conduct was so dangerous that a public safety call was made. His wife was afraid of him. He admits that he was shooting towards a propane tank. As the district court judge noted, it was exceptionally dangerous because if that tank had been pierced, there could have been a serious explosion, people could have been harmed. All the while he was doing that, he was clearly intoxicated by his own admission. He failed a field sobriety test, so that goes back to the concerns about unlawful drug use, which at least in some component is the physiological and cognitive impairments that come along with that and the danger that that presents when you're handling a firearm. And then we have the broader context, as Judge Radler noted, of someone who's assembling weapons, assembling pipe bombs. He has these manuals where he's going through and learning how to build bombs. Is that relevant to the G3 inquiry? I think it's to the extent that this court, I think, can properly apply the Williams tradition and to the extent that an as-applied analysis is appropriate in this case, it's clearly relevant, Your Honor. I think that broadly goes to dangerousness. I personally find the argument that the defendant is making in this case somewhat strange because what Williams says is effectively Congress can make these categorical determinations and then you have to prove that you aren't dangerous. And I would have to imagine that in many cases, not only just the broader context of dangerousness of what I would point to as a government attorney of his conduct in this case, but I have to imagine that there would be circumstances where a defendant would want to point to mitigating facts like rehabilitation, character witnesses. And I think that's consistent certainly with historical law. As Williams noted, people often, in order to get these disabilities removed, would have to go to a justice of the peace, and the justice of the peace would have the criteria, and the criteria would be loyalty oaths, attestation of others. So I think a very broad inquiry, and it certainly makes sense, and it would lead to, I think, very strange outcomes if the court could not consider more broad circumstances. I mean, just by one example, I think it's clear that Mr. Van Octen was intoxicated and was under the influence. He failed a field sobriety test, and I think the most relevant point on that is that it was probably a combination of both his alcohol use and his marijuana use. And the fact that they found a blood alcohol level content and whatever else would be a strange result if you could say, well, you were drinking so heavily that you can't show that it was the marijuana use that was rendering you cognitively impaired. I mean, it would be certainly a strange result. Unless the court has any further questions, I would just ask the court to... Do you have anything more to say about your opposing counsel's point about all the weapons being stored in the defender's home, whether he's possessing those weapons or not, and whether he needed to be intoxicated while owning or possessing the weapons in the home? Yes, certainly, Your Honor. So from what I understand, and correct me if I'm misunderstanding, the point that he's trying to make is that he was only in possession of several of the firearms. He wasn't carrying or shooting those firearms while he was under intoxication. And I think this goes to the broader point about you have to consider these historical regulations together. Certainly, Williams looked at a possession statute, Rahimi looked at a possession statute, and drew upon laws that weren't necessarily relevant simply to... or that didn't address just possession. So Rahimi, we have the surety laws, which are effectively a bond. There are other circumstances, like the going armed laws, where that is certainly the case as well. And I think it all goes back to the broader point, Your Honor, that Mr. Van Ochten's wife told law enforcement that he would go out, he would shoot his guns, drink alcohol, and smoke marijuana, and that this was part of a continuing pattern. And certainly the concern about dangerousness is not alleviated simply because the guns or the bombs were in another room. Mr. Van Ochten had easy access to those, especially in this case. He was using one gun to shoot, the one with the binary trigger by his own admission, to shoot towards the birds. And then when officers encountered him, he had another gun in his hand, a pistol. And I think the broader theory is that you can uphold simply the possession based on historical laws. Which is more relevant, the extra guns or the pipe bombs? One gun was being used at the time, but none of the other guns were being used. The pipe bombs were not being used at that moment. But is one of those more relevant than the other? Are they sort of the same? Relevant as to the Second Amendment disarmament? Dangerousness analysis? Dangerousness. I think they're both certainly relevant, and this goes back to maybe what I call totality of the circumstances. It's relevant because he had a gun in his hand. He had been shooting another gun. He encountered officers with a gun in his hand. He had to be convinced to sit down the gun. He was severely inebriated, and that posed certainly a risk to the officers. And on top of it, you have someone who is more broadly building weapons, clearly dangerous. There's, I think, a clear thread that Mr. Van Ockton's wife, especially, was very concerned about him. I'll ask you to pick between the two. I mean, if I had to say, in terms of like— Maybe you're saying they're the same. I don't know. I don't know if I could disentangle them. If I had to say most relevant to the dangerousness at the time he was encountered by the officers, I would have to say it was the gun possession because that presented, I think, the most imminent threat. Probably maybe a more broader concern about dangerousness was his possession of these weapons. Not only that maybe he might use them, or by his own admission, he had used them or might not have in fishing, but it was particularly dangerous just in how they were stored as the ATF agent testified. I mean, it was these black powder plus a combination of tannerite. It was a significant risk, and they were just not stored in a safe manner whatsoever. And I do think that fact as well is certainly relevant. All right. Thank you. Thank you, Your Honors. Reverend Buttle. I think the most important question in this case is can the legislature designate any class as presumptively dangerous and then have it be the individual's burden to show they are not dangerous in this wide-open inquiry that has no benchmarks? This is why we believe it's appropriate for the court to look at benchmarks related to the particular class-wide generalization, which in this case is the generalization that using a controlled substance makes a person dangerous. Going back to Judge Clay's question, as we pointed out in our original argument, in this case even if you take the firearm that Mr. Van Ocknoe is firing and the pistol that he possessed while under the influence of marijuana, that is still not enough for the sentencing enhancement to apply in this case. That enhancement applies solely because the district court determined that as a habitual user of marijuana, he was not permitted to own or possess any firearms. So the approximately dozen firearms that he legally possessed in his home, the district court determined that possession in his home was illegal and thus relevant conduct to his offense of possessing pipe bombs. For that reason, we believe that it is appropriate for the court to remand this case to the district court. I just wanted to make one point about the government's new argument on appeal that they raised regarding the pipe bombs and the fact that those are not necessarily arms under the Second Amendment. I just wanted to reiterate that that's not the basis for this court to affirm the district court because regardless of the base offense level, we have the specific offense characteristic here based on the number of firearms. And that is only reached if the court determines that it was constitutional for the government to determine that Mr. Van Ochten could not possess the pistols and rifles in his home due to the habitual use of marijuana. Thank you, Your Honor. Thank you very much, and the case shall be submitted.